IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| SOPHIA A. RIVAS )<br>)<br>**Plaintiff,** )<br>)<br>v. )<br>)<br>BURNS & MCDONNELL, INC. and )<br>ASTRAWORKS, LLC )<br>)<br>**Defendants.** ) | CASE NO. 4:22-CV-00969 |

**COMPLAINT**
**(Demand for Jury Trial)**

Sophia A. Rivas ("Rivas" or "Plaintiff") complains of and seeks damages from Burns & McDonnell ("B&M") and AstraWorks, LLC ("AstraWorks") (collectively, "Defendants") under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. For these causes of action, Plaintiff states as follows:

**PARTIES**

1. Plaintiff is a female who resides in Frisco (Collin County), Texas.

2. Defendant Burns & McDonnell, Inc. is an architectural and engineering firm organized as a corporation under the laws of the state of Kansas with its principal place of business located in Kansas City, Missouri and may be served with citation by serving its registered agent Incorp Services, Inc. at its address on file with the Texas Secretary of State: 815 Brazos Street, Suite 500, Austin, Texas, 78701.

3. Defendant AstraWorks, LLC is a national recruiting and staffing firm organized as a limited liability company under the laws of the state of Missouri with its principal place of business located in Kansas City, Missouri and may be served with citation by serving its registered

agent Registered Agents, Inc. at its address on file with the Texas Secretary of State: 5900 Balcones Drive, Suite 100, Austin, Texas 78731.

## JURISDICTION AND VENUE

4. Plaintiff seeks relief for violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3(a). Accordingly, this Court has jurisdiction under 28 U.S.C. § 1331.

5. At all times material hereto, Defendants conducted business in Texas and were doing business in the State of Texas by employing Plaintiff in Fort Worth, Texas. The causes of action asserted herein arose from and are connected to purposeful acts committed by Defendants during Plaintiff's employment in Fort Worth, Texas.

6. A substantial portion of the acts and omissions giving rise to Plaintiff's claims occurred in Fort Worth, Texas. Venue is proper in this district and division under 28 U.S.C. § 1391 and 42 U.S.C. § 2000e-5(f)(3).

## EXHAUSTION OF ADMINISTRATIVE PROCEDURES AND REMEDIES

7. Plaintiff timely filed with Equal Employment Opportunity Commission ("EEOC") a charge of discrimination and retaliation against Defendants. Plaintiff received a notice of her right to sue from the EEOC and timely filed this Complaint within those 90 days of receiving that notice of right to sue.

## JOINT EMPLOYER LIABILITY

8. B&M and AstraWorks are each an employer as that term is defined under Title VII, employing more than 15 employees. Given their relationship and common management and control of contingent workers, AstraWorks and B&M are a single integrated enterprise and joint

employers of Plaintiff for purposes of Title VII. Consequently, B&M and AstraWorks are jointly and severally liable for the damages alleged herein by Plaintiff.

## FACTUAL BACKGROUND

9. Plaintiff interviewed with B&M on June 2, 2021 and was notified later that afternoon by Ryan Fereras (at AstraWorks) that she was being offered a full-time position with B&M, as a Marketing Coordinator.

10. As a contingent employee, Plaintiff's employment with B&M was for a six-month period, after which it was understood that B&M would make the decision (based on her performance during that initial period) whether to extend an offer for Plaintiff to become employed full-time beyond the contingent arrangement.

11. The initial new hire paperwork indicated the position title was Proposal Coordinator, but Plaintiff was informed that the two titles were interchangeable.

12. Plaintiff's start date was June 28, 2021, and Plaintiff relocated from Richardson to Forth Worth for the position.

13. During Plaintiff's initial week and as part of the onboarding process, Plaintiff met with various team members and learned that two of Plaintiff's colleagues in the Fort Worth office (Olivia Ash and Michelle Betscher) would facilitate Plaintiff's onboarding training and act as informal workplace mentors. Ms. Ash and Ms. Betscher were Proposal Strategists in the Fort Worth office.

14. Plaintiff was told that Proposal Coordinators and Proposal Strategists essentially performed the same functions as co-workers, with the differentiating factor being that "Strategists" generally have more years of experience in the same or similar position in the AEC industry.

15. Initially, Ms. Ash and Ms. Betscher were welcoming and friendly, assisting Plaintiff in assimilating within the organization and working with the other offices. They also supervised and monitored Plaintiff's workload, by initially funneling Plaintiff project work.

16. Plaintiff excelled in her position and was given an ever-increasing amount of responsibility. Plaintiff began building direct relationships with department managers, who started giving Plaintiff work directly (as opposed to having it funneled through Ms. Ash and Ms. Betscher). Essentially, Plaintiff was becoming an integral part of the team and, by obtaining work directly from department managers, lightening the workload of Plaintiff's colleagues.

17. By early August 2021, Plaintiff became good friends with the receptionist in B&M's Fort Worth office (Yvonne, a black female). By this time, Ms. Ash and Ms. Betscher had become comfortable enough around Plaintiff to make comments regarding other employees. In particular, they made comments regarding Yvonne that seemed, at a minimum, inappropriate. For example, they would make derogatory comments regarding Yvonne's workplace attire, despite the fact that there were white female employees in the office who wore similar attire. They constantly would speak poorly about Yvonne behind her back, which Plaintiff found to be both unprofessional and inappropriate.

18. Soon, the workplace bullying by Ms. Ash and Ms. Betscher expanded to also target Plaintiff. They began making comments to Plaintiff suggesting that Plaintiff was essentially receiving attention and quicker responses from some of the male department and project managers due solely to Plaintiff's appearance. In addition, they began to exert control over Plaintiff's schedule, even going so far as to (incorrectly) notify others that Plaintiff would be "out of office" and therefore unavailable to assist on certain projects or events.

19. When Plaintiff questioned them regarding the scheduling issues, they attempted to justify their conduct by stating (again, incorrectly) that Plaintiff would be unable to attend due to overtime constraints. It became evident to Plaintiff that Ms. Ash and Ms. Betscher were becoming more resentful of Plaintiff's success and direct relationships with engineers, assistants, and department managers.

20. They would routinely interrogate Plaintiff whenever Plaintiff met with managers or assisted with internal events, asking Plaintiff who Plaintiff went to lunch with, who Plaintiff was assisting, and why Plaintiff was even assisting others.

21. As the relationships with Ms. Ash and Ms. Betscher deteriorated, they because less and less subtle in the hostility they exhibited, often ignoring Plaintiff or loudly complaining about Plaintiff's now-increased workload making Plaintiff less available to assist them in their jobs. This, despite the fact that Plaintiff had already taken on a number of additional responsibilities for weeks when Ms. Betscher would need to be away intermittently to attend to her mother (who was ill).

22. In December 2021, Plaintiff requested a performance review from Scott Clark, a B&M vice president and the manager of the Dallas and Fort Worth offices.

23. Mr. Clark agreed to the request and scheduled a meeting for December 21, 2021 to conduct the performance review. The calendar entry was placed on Plaintiff's calendar as private. However, Plaintiff soon received an email from Ms. Ash and Ms. Betscher requesting that Plaintiff complete a self-appraisal and return it to them, utilizing the same appraisal form that Plaintiff had sent to Mr. Clark in connection with Plaintiff's performance review.

24. Plaintiff reported this to Mr. Clark, who agreed that such a self-review was neither needed nor appropriate at this time. He indicated that he had spoken with them about the situation.

25. Following that incident, the tension between Plaintiff and Plaintiff's two colleagues remained very high.

26. On December 21, 2021, Plaintiff met with Mr. Clark for her performance review. During the meeting, Mr. Clark reviewed Plaintiff's performance and provided positive feedback in virtually all areas. In addressing the section entitled "Areas to Work On," Mr. Clark noted feedback of "difficult to coach and poor time management."

27. Plaintiff knew immediately which two colleagues in Fort Worth had submitted those to Mr. Clark, as it was clear that Ms. Ash and Ms. Betscher were intent on creating impediments to Plaintiff's advancement within the organization. Nonetheless, Plaintiff took the comments constructively and indicated to Mr. Clark a willingness and desire to always improve and continue performing at a high level.

28. During that meeting, and following the formal performance appraisal, Mr. Clark noted that Plaintiff's contract would end in January and told Plaintiff that on the strength of Plaintiff's performance, B&M wanted to move forward with offering Plaintiff full-time employment at the end of Plaintiff's contract. Mr. Clark then congratulated Plaintiff on Plaintiff's hard work and the job offer.

29. Before concluding the meeting, Mr. Clark asked Plaintiff if there were any issues that Plaintiff wanted to discuss and said that he would leave the floor open to answering any questions that Plaintiff may have about the ESOP, employment benefits, the employee ownership program, or any other questions that Plaintiff might have or issues that Plaintiff wished to discuss.

30. At his invitation, Plaintiff proceeded to inform Mr. Clark regarding the workplace difficulties and hostile work environment that Plaintiff had been dealing with for the past few months. In particular, Plaintiff reported on the workplace bullying by Ms. Ash and Ms. Betscher,

including their attempts to control Plaintiff's calendar, the purported requirement that Plaintiff submit any self-appraisal to them, their attempts to impede Plaintiff's performance by withholding necessary project information and work from Plaintiff, retaliating against Plaintiff for providing basic assistance and support for internal events, and the constant stream of interrogations. Plaintiff suggested to Mr. Clark that a lot of the office hostility was likely attributable to two proposal strategists acting as "self-proclaimed bosses."

31.     Mr. Clark responded by immediately apologizing for the conduct and behavior and stated that this was not how he ran his office and was not the Burns & McDonnell culture.

32.     After briefly discussing and dismissing several suggestions by Plaintiff (for example, relocating Plaintiff to the Dallas office or relocating Plaintiff's workspace within the Fort Worth office), Mr. Clark stated that he would reach out to the corporate human resources manager (Stefanie DeMonbrun) so that Plaintiff's concerns could be properly addressed.  The meeting then concluded, with no indication at all from Mr. Clark that the candid conversation he had invited regarding workplace issues had any impact on the company's decision to move forward with Plaintiff's full-time permanent employment.

33.     Later that afternoon, Plaintiff began feeling ill.  Plaintiff tested positive for COVID-19 that evening.  Plaintiff submitted the required paperwork in accordance with the company's COVID protocol and notified Mr. Clark by e-mail that Plaintiff would be working remotely until Plaintiff had been cleared to return to the office.

34.     Plaintiff interacted with Ms. DeMonbrun (the corporate human resources manager) through Teams within a few days regarding Plaintiff's COVID questionnaire paperwork, but there was no mention or discussion of any of the complaints that Plaintiff understood would be submitted to human resources by Mr. Clark.

35. In early January 2022, Plaintiff communicated with both Ryan Fereras and Karin Galba (Human Resources) at AstraWorks, when Plaintiff updated both of them regarding Plaintiff's conversations with Scott Clark at B&M. Ms. Galba inquired regarding the verbal offer that Plaintiff had received and congratulated Plaintiff on the offer. Ms. Galba indicated that Plaintiff would hear from her the following week when she (Ms. Galba) returned to the office following a scheduled surgery.

36. Between January 5 and January 19, 2022, Plaintiff heard nothing from either AstraWorks or B&M regarding the reported issues or details related to the full-time employment offer.

37. Plaintiff had already returned to the office following her COVID quarantine, yet Mr. Clark appeared to make an effort to specifically avoid interacting with Plaintiff. He would purposely change directions when we would approach in the hallway in order to avoid contact, and in instances where there was interaction, for example, passing in the break room, he was remarkably short and abruptly ended any conversation.

38. On January 20, 2022, Ms. Betscher requested that Plaintiff send over survey templates that were saved to Plaintiff's desktop, indicating that Mr. Clark's executive assistant (Harmony Hudgens) had specifically requested them. Ms. Hudgens later told Plaintiff that she had never made any such request.

39. Later that same afternoon, Plaintiff received a call from Ryan Fereras at AstraWorks informing Plaintiff that, effective immediately, B&M was terminating Plaintiff's contract (and presumably, the verbal offer of employment was being rescinded as well). He told Plaintiff that he was calling Plaintiff "after hours" because he wanted to reach Plaintiff after

Plaintiff had left for the day. Plaintiff was already on her way back to the office, so Plaintiff continued in order to obtain her personal items from her workspace.

40. Mr. Fereras called Plaintiff again later to make arrangements for Plaintiff to return her identification badge and computer and sign paperwork the following morning at B&M.

41. After returning her badge and computer the next morning at B&M, Plaintiff called and spoke with Ryan Fereras and asked what happened. Mr. Fereras offered no explanation. Mr. Fereras did indicate that he would look into it and get back in touch with Plaintiff, and include Ms. Galba in the follow-up call; however, Plaintiff never heard from him (or anyone at AstraWorks) after that telephone call.

42. Plaintiff's contract was terminated—along with Plaintiff's job offer for future employment—due to her complaints of inappropriate workplace behaviors, include bullying and discrimination.

43. Despite the request from Mr. Clark for Plaintiff to discuss any items or issues of concern, he clearly did not want to hear what he was told. And despite having received a positive performance appraisal and a resulting job offer, Plaintiff's employment situation changed substantially for the worse as soon as Plaintiff reported the inappropriate and unlawful workplace behavior.

44. Plaintiff has been discriminated against because of her sex (female) and was retaliated against after engaging in protected activity. The discrimination and retaliation are in violation of Title VII of the Civil Rights Act of 1964, as amended, and the Texas Commission on Human Rights Act, as amended.

## CAUSES OF ACTION

### A. Count One: Discrimination under Title VII

45. Plaintiff repeats and realleges, as if fully set forth herein, the allegations of the preceding paragraphs.

46. Plaintiff alleges that Defendant as Plaintiff's employer subjected her to a sexually hostile work environment in violation of § 42 U.S.C. § 2000e-2 *et seq*.

47. Plaintiff is a member of a protected class (female). Plaintiff was subjected to unlawful discriminatory treatment based on her gender which continued through her retaliatory termination. 42 U.S.C. § 2000e(f).

48. Defendants are employer within the meaning of Title VII. 42 U.S.C. § 2000e(b).

49. Given their relationship and common management and control of contingent workers, Defendants are a single integrated enterprise and joint employers of Plaintiff for purposes of Title VII.

50. All conditions precedent to filing this action for discrimination under federal law have been met.

51. Defendants, by and through the actions of their employees, violated Title VII, as amended, by discriminating against and harassing Plaintiff and creating a hostile work environment for Plaintiff based on her gender (female).

52. Defendants allowed hostile work environment that targeted female employees, including Plaintiff, to persist.

53. Plaintiff complained about the discrimination and harassment in accordance with Defendants' policies and procedure but Defendants failed or refused to investigate. Defendants knew or should have known about the harassment and failed to take prompt remedial action.

54. Plaintiff would not have been subjected to the harassment but for her gender, as evidenced by the conduct directed towards her.

55. The harassment of which Plaintiff complains was severe and pervasive and altered the terms and conditions of her employment and created a hostile and abusive work environment.

56. By the aforesaid acts and omissions of Defendants, Plaintiff has been directly and legally caused to suffer actual damages including, but not limited to, loss of earnings and future earning capacity, attorneys' fees, costs of suit and other pecuniary losses not presently ascertained.

57. As a further direct and legal result of the acts and conduct of Defendants, Plaintiff has been caused to and did suffer and continues to suffer severe anguish, humiliation, embarrassment, and anxiety. The exact nature and extent of said injuries is presently unknown to Plaintiff, who will seek leave of Court to assert the same when they are ascertained. Plaintiff does not know at this time the exact duration or permanence of said injuries, but believes, and thereon alleges, that some if not all of the injuries are reasonably certain to be permanent in character.

58. Plaintiff is entitled to an award of attorney fees and costs under Title VII, 42 U.S.C. § 2000e-5(k).

59. Such discrimination by Defendants against Plaintiff was intentional. Accordingly, Plaintiff is entitled to recover damages from Defendants for back pay, front pay, past and future pecuniary losses, emotional pain and suffering, inconvenience, loss of enjoyment of life and other nonpecuniary losses. Further, this discrimination was done by Defendants with malice or with reckless indifference to Plaintiff's federally protected rights. Plaintiff is therefore also entitled to recover punitive damages.

60. Plaintiff requests relief as described in the Prayer for Relief below.

### B. Count Two: Retaliation Under Title VII

61. Plaintiff repeats and realleges, as if fully set forth herein, the allegations of the preceding paragraphs.

62. Plaintiff has satisfied all jurisdictional prerequisites in connection with her claims under Title VII.

63. Given their relationship and common management and control of contingent workers, Defendants are a single integrated enterprise and joint employers of Plaintiff for purposes of Title VII.

64. Plaintiff engaged in protected activity by, among other things, complaining about the discriminatory treatment by her supervisors and peers and participating in the investigation process for that complaint.

65. Plaintiff reasonably believed the situation involving her supervisors/co-workers constituted unlawful discrimination on the basis of sex and a hostile environment.

66. Plaintiff suffered adverse action, including the termination of her contingency employment and the rescission of her permanent offer of employment.

67. Defendants retaliated against Plaintiff by termination Plaintiff's contingency employment for her action in complaining about the workplace discrimination and harassment by her supervisors/co-workers. Defendants further retaliated against Plaintiff by rescinding her offer of full-time employment.

68. There was a causal connection between Plaintiff's participation in the protected activities described above and the adverse employment decisions and actions by Defendants against Plaintiff. But for the fact that the Plaintiff engaged in these protected activities, Plaintiff would not have suffered the adverse employment actions.

69. The employment practices complained of above were intentional.

70. As a result of Defendants' retaliatory conduct, Plaintiff has suffered and will continue to suffer pecuniary losses, including but not limited to, lost wages and other benefits associated with her contingency and full-time employment. Plaintiff has also suffered compensatory damages which were a natural, probable and foreseeable result of Defendants' actions.

71. As a further result of Defendants' retaliatory conduct, Plaintiff has suffered nonpecuniary losses, including but not limited to, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses. Plaintiff seeks compensatory damages under Title VII.

72. Plaintiff has been generally damaged in an amount within the jurisdictional limits of this Court.

73. Plaintiff alleges that Defendants, by engaging in the aforementioned acts and by ratifying such acts, engaged in willful, malicious, intentional, oppressive and despicable conduct, and acted with willful and conscious disregard of Plaintiff's rights, welfare, and safety, thereby justifying an award of punitive and exemplary damages in an amount to be determined at trial.

74. As a result of Defendants' acts as alleged herein, Plaintiff is entitled to reasonable attorneys' fees and costs of suit, including reasonable expert fees, as provided in Title VII of the Civil Rights of 1964, as amended.

75. Plaintiff also requests relief as described in the Prayer for Relief below.

## JURY DEMAND

76. Plaintiff demands a trial by jury as to all issues.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Sophia A. Rivas respectfully requests that on final trial, judgment be granted against Defendants Burns & McDonnell, Inc. and AstraWorks, LLC awarding Plaintiff the following:

a. Back pay, including but not limited to, lost wages and other employment benefits;

b. Front pay and benefits;

c. Actual damages;

d. Compensatory and/or punitive damages, in the maximum amount allowed by law;

e. Prejudgment and post-judgment interest, in the maximum amount allowed by law;

f. Attorneys' fees, expert fees, and costs of suit; and

g. Such other and further legal and equitable relief to which Plaintiff may be justly entitled.

Respectfully submitted October 27, 2022.

/s/ Kevin M. Duddlesten\
Kevin M. Duddlesten\
Texas Bar No. 00793644\
DUDDLESTEN LAW GROUP, PLLC\
4347 W Northwest Hwy Ste 130, PMB 325\
Dallas, TX 75220\
Phone: (214) 833-5228\
Facsimile: (469) 457-6785\
Email: kevin@duddlestenlawgroup.com

ATTORNEYS FOR PLAINTIFF